**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

MYKOLA YUZHAKOV,

    Plaintiff,

    v.

JULIE A. HOLDRIDGE NICHOLS,

    Defendant.

Civil Action No. 25-2037-TDC

**MEMORANDUM OPINION**

Plaintiff Mykola Yuzhakov filed a civil action against Defendant Dr. Julie A. Holdridge Nichols ("Nichols"), a federal employee, in the District Court of Maryland for Montgomery County in which he asserted common law tort claims of defamation and tortious interference. After the case was removed to this Court, Yuzhakov filed a Motion to Remand, and the United States ("the Government") filed a Motion to Substitute the United States as the defendant in this case. The Motions are fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Yuzhakov's Motion to Remand will be DENIED, and the Government's Motion to Substitute will be GRANTED.

**BACKGROUND**

**I.    The February 14, 2025 Incident**

From April 2024 to February 2025, Yuzhakov was employed by Charles River Laboratories ("CRL"), a federal contractor, in the role of a Research Laboratory Veterinary Technician working at the National Institute of Allergy and Infectious Diseases ("NIAID") in

Bethesda, Maryland, which is part of the National Institutes of Health ("NIH"). During this same time period, Nichols was a federal employee who worked at NIAID as a Facility Veterinarian and was designated as CRL's client, meaning that, according to Yuzhakov, Nichols possessed supervisory authority over all CRL staff at NIAID, including Yuzhakov.

On the morning of February 14, 2025, Yuzhakov sent Nichols an email wishing her a happy birthday in which he mentioned her eye color. Later that day, Nichols sent an email to two CRL managers and to an NIH contracting officer's representative ("COR") in which she reported that Yuzhakov had come into her office, shut the door behind him, come around to her side of the desk, and given her a box of chocolates and a bottle of wine that he had been carrying under his jacket. He also said that she was "looking good" and had "aged well." Pl.'s Reply Ex. A at 5, 7, ECF No. 31-1. In a follow-up email, Nichols also reported that a few weeks earlier, after she congratulated Yuzhakov on passing an examination for a professional certification, he said that he had done it for her and put his arm around her, and that he had previously made comments about her eye color.

Subsequently, NIAID requested to CRL that Yuzhakov no longer work on the NIAID contract, and that he not work at any NIAID facility. As a result, and where CRL had no other contracts to which Yuzhakov could be appropriately assigned, CRL terminated Yuzhakov on or about February 20, 2025. On February 23, 2025, Nichols reported that Yuzhakov had attempted to communicate with her on her personal phone through WhatsApp. Nichols also contacted the NIH Police Department to request that Yuzhakov be barred from entering the NIAID premises.

In the present filings relating to the Motion to Remand and the Motion to Substitute, Yuzhakov asserts that throughout his employment at NIAID, Nichols engaged in "pervasive intimate verbal and physical sexualized contact" toward him, which made him "deeply uncomfortable." Yuzhakov Decl. at 27, 30, Pl.'s Reply Ex. B, ECF No. 31-2. According to

Yuzhakov, on February 14, 2025, he went to Nichols's office and gave her "a modest birthday gift" "as a response to her visible frustration at his rejections of her earlier advances." *Id.* at 34. Yuzhakov asserts that after accepting the gift, Nichols was audibly happy and then wished Yuzhakov a "Happy Valentine's Day," hugged him, and attempted to kiss him. *Id* at 35. Yuzhakov claims that he did not reciprocate, rejected Nichols's attempted kiss, did not respond to her Happy Valentine's Day remark, and reminded her that he was only acknowledging her birthday. According to Yuzhakov, once Nichols realized that two unidentified staff members had witnessed Nichols's hug and attempted kiss, she hid Yuzhakov's gift under her desk, at which point Yuzhakov left her office.

Yuzhakov claims that Nichols was humiliated over the fact that these two staff members had witnessed her improperly hugging and attempting to kiss Yuzhakov, so she decided to submit a complaint to the COR. According to Yuzhakov, this action was vindictive because the normal procedure for complaining about a contractor would have been for Nichols to submit her complaint to CRL facility management. The same day as the February 14 incident, Yuzhakov filed an internal complaint against Nichols in which he alleged that she had engaged in sexual harassment.

## II.    Procedural History

On April 8, 2025, Yuzhakov filed the present Complaint in the District Court of Montgomery County in which he alleged that on February 14, 2025, Nichols had engaged in defamation and tortious interference "arising from false misconduct claims" that in turn led to his termination. Compl. at 1, ECF No. 3. He stated that Nichols's misconduct claim "followed nearly 10 months of consensual, non-hostile interactions, including a birthday gift exchange." *Id.*

On June 24, 2025, the Chief of the Civil Division of the United States Attorney's Office for the District of Maryland, Thomas F. Corcoran, signed a certification, pursuant to authority

delegated from the United States Attorney, that Nichols was acting within the scope of her employment as an employee of the United States at all times relevant to Yuzhakov's Complaint ("the Corcoran Certification"). On June 25, 2025, the United States removed this case to the United States District Court for the District of Maryland in accordance with 28 U.S.C. § 2679(d)(2). On August 1, 2025, Yuzhakov filed a Motion to Remand and to Deny Substitution of the United States, or, if the Record is Insufficient, for Limited Discovery and an Evidentiary Hearing ("the Motion to Remand"). On September 19, 2025, the Government filed a Motion to Substitute the United States as the defendant in this case pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, 28 U.S.C. § 2679(d)(1). *See Osborn v. Haley*, 549 U.S. 225, 229 (2007).

On October 3, 2025, Yuzhakov filed a Motion for Leave to File an Audio Recording as an Exhibit in relation to the Motion to Substitute. On December 10, 2025, Yuzhakov filed a Motion to Strike the Government's Motion to Substitute and its accompanying exhibits. On January 7, 2026, the Government, as part of its reply brief in support of its Motion to Substitute, submitted an updated certification, dated November 21, 2025, in which the United States Attorney for the District of Maryland, Kelly O. Hayes, certified that Nichols was acting within the scope of her employment as an employee of the United States at all times relevant to Yuzhakov's Complaint ("the Hayes Certification"). On February 17, 2026, Yuzhakov filed a Motion for Leave to File a Surreply in relation to the Motion to Substitute. That same day, Yuzhakov also filed a Motion for Leave to Seek a Limited Evidentiary Appearance. On March 16, 2026, Yuzhakov filed a Notice of Intent to Seek Leave for a Limited Evidentiary Supplement and Supplemental Memorandum.

## DISCUSSION

### I.    Procedural Motions

Before considering the Motion to Remand and the Motion to Substitute, the Court will first consider Yuzhakov's procedural motions. First, in Yuzhakov's Motion to Strike, Yuzhakov argues that the Court should strike the Motion to Substitute because it relies on the Corcoran Certification, which Yuzhakov argues is invalid. He also argues that the Court should strike the evidence attached to the Motion to Substitute because it includes misleading excerpts of an email chain, hearsay, and irrelevant evidence. Generally, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Upon review, the Court finds neither the Motion to Substitute, nor the evidence attached to that Motion, contain material that is redundant, immaterial, or scandalous. Yuzhakov's argument that the Corcoran Certification is invalid and his objections to the submitted evidence will be considered in resolving the Motion, but they do not provide a basis for striking such evidence prior to resolution of those Motions. The Motion to Strike will therefore be denied.

Second, the Motion for Leave to File a Surreply will be granted, and the surreply brief will be accepted and docketed, because Yuzhakov seeks through his surreply brief to address the Hayes Certification, which was presented for the first time with the Government's reply brief in support of the Motion to Substitute.

Third, in the Motion for Leave to Seek a Limited Evidentiary Appearance, Yuzhakov seeks a "Court-controlled evidentiary appearance limited to oath-bound clarification of the predicate facts defining the object of review under 28 U.S.C. § 2679(d)," which he argues is necessitated by the submission of the Hayes Certification. Mot. Evid. Appearance at 1, ECF No. 48. As discussed below, the validity of the Hayes Certification, and the Motion to Substitute more broadly, can be

and are appropriately resolved without an evidentiary hearing. *See infra* parts II.B, III. The Motion for Leave to Seek a Limited Evidentiary Appearance will therefore be denied. Relatedly, Yuzhakov's recently filed Notice of Intent to Seek Leave for a Limited Evidentiary Supplement and Supplemental Memorandum, which the Court will construe as a Motion for Leave to File a Limited Evidentiary Supplement and Supplemental Memorandum, also fails. Where this Motion effectively seeks leave to file another surreply brief and additional documents in relation to the Motion for Leave to Seek a Limited Evidentiary Appearance, the Motion to Substitute, or both, and where Yuzhakov has already been allowed to file one surreply brief and multiple motions addressing the same issues and has had multiple opportunities to submit evidence in relation to the pending motions, this request will be denied. *See* D. Md. Local R. 105.2(a). The Court notes that even if it were to grant this request, upon review of the attached documents, the Court finds that they do not materially change the record.

Fourth, in the Motion for Leave to File an Audio Recording, Yuzhakov seeks to submit as evidence an audio recording that captures the conversation he had with Nichols on February 14, 2025, which Yuzhakov says he inadvertently recorded on his cell phone. The Government argues that the recording, made without Nichols's consent or knowledge, should be excluded as inadmissible because the recording violated the Maryland Wiretap Act, which provides that it is "unlawful for any person to . . . [w]illfully intercept . . . any wire, oral, or electronic communication" unless the person intercepting the communication "is a party to the communication and where all of the parties to the communication have given prior consent to the interception." Md. Code Ann., Cts. & Jud. Proc. §§ 10–402(a)(1), (c)(3) (LexisNexis 2020). A communication unlawfully intercepted pursuant to this statute is inadmissible in a Maryland state court proceeding. *Id.* § 10–405(a).

Judges in this District, however, have held that this provision does not bar admission of such evidence in federal court because "[e]vidence obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings *without regard to state law.*" *United States v. Blank*, No. WDQ-14-0448, 2015 WL 4041408, at *7–8 (D. Md. June 30, 2015) (quoting *United States v. Sutherland*, 929 F.2d 765, 769 (1st Cir. 1991)), *aff'd*, 659 F. App'x 727 (4th Cir. 2016); *see Mills v. PPE Casino Resorts Md., LLC*, No. RDB-15-495, 2017 WL 1862474, at *2 n.6 (D. Md. May 8, 2017). Moreover, in this instance, Yuzhakov disputes that he had the state of mind to violate the Maryland Wiretap Act, presumably based on his assertion that he had been using his cell phone to record a work-related medical check and forgot to turn off the recording function before speaking to Nichols, such that the Court cannot presently conclude that the recording was made in violation of the state law. Accordingly, the Court will grant the Motion and accept the recording.

## II.    Motion to Remand

In the Motion to Remand, Yuzhakov argues that the Court should remand this case to state court because the Corcoran Certification did not satisfy the requirements of 28 U.S.C. § 2679(d)(1) or its accompanying regulation, which identify the officials who can file a certification under the Westfall Act. Yuzhakov also argues that the certification incorrectly asserts that Nichols acted within the scope of her employment when she filed the internal complaint against Yuzhakov on February 14, 2025, because she was motivated by personal animus and an interest in retaliation.

### A.    Legal Standard

The Westfall Act provides federal employees with "absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn*, 549 U.S. at 229 (citing 28 U.S.C. § 2679(b)(1)). Thus, when a federal employee is sued for such a

claim in state court, the Westfall Act permits the United States Attorney General to certify that the employee's action was within the scope of employment at the time of the incident out of which the claim arose. *See* 28 U.S.C. § 2679(d)(2). "This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal." *Id.* Once that certification is made, the state court case "shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending." *Id.*

### B.    Validity of the Certification

Yuzhakov argues that remand is warranted because the Corcoran Certification was invalid because Corcoran, as the Civil Chief at the United States Attorney's Office for the District of Maryland, was not authorized to execute the certification under the applicable statute and regulations. The relevant statutory provision states that the certification is to be made "by the Attorney General," *id.*, and the relevant regulation states that "[t]he United States Attorney for the district where the civil action or proceeding is brought, or any Director of the Torts Branch, Civil Division, Department of Justice, is authorized to make the statutory certification that the Federal employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose." 28 C.F.R. § 15.4(a).

The Government argues that the Corcoran Certification is valid because the United States Attorney for the District of Maryland, Kelly O. Hayes, delegated her authority to make Westfall Act certifications to Corcoran via a March 5, 2025 memorandum. Such a delegation is permissible. *See Johnson v. Sullivan*, 748 F. Supp. 2d 1, 13 n.6 (D.D.C. 2010) (holding that a plaintiff's challenge to the validity of a Westfall Act certification by the Chief of the Civil Division of the United States Attorney's Office for the District of Columbia was "meritless" where the United

8

States Attorney for the District of Columbia had delegated the Westfall Act certification authority to that official). Even if the delegation were not permissible, the Government has also provided the Hayes Certification, by the relevant United States Attorney herself, which undisputedly complies with 28 C.F.R. § 15.4(a). Although Yuzhakov argues that the Government cannot rely on this later certification, there is no time limit for a certification and removal under the Westfall Act, which expressly permits the Government to file such a certification and then remove the case "at any time before trial." 28 U.S.C. § 2679(d)(2). Indeed, in the related context of withdrawing a Westfall Act certification, the United States Court of Appeals for the Fourth Circuit has rejected the argument that "the Justice Department's initial scope certification [has] conclusive effect." *Jamison v. Wiley*, 14 F.3d 222, 235 (4th Cir. 1994). Accordingly, the Court rejects the argument that this case must be remanded based on a defective certification.

### C.    Scope of Employment

In his Motion to Remand, Yuzhakov also suggests that the Corcoran Certification is legally invalid because the Department of Justice's "perfunctory handling of certification—including misidentifying the parties and failing to review the underlying facts—confirms that no meaningful, fact-based determination was made," such that the certification "must be set aside." Mot. Remand at 11, ECF No. 13. Under the Westfall Act, however, the certification "conclusively establish[es] scope of office or employment for purposes of removal." 28 U.S.C. § 2679(d)(2). In *Osborn*, the United States Supreme Court concluded that this language means that "Congress gave district courts no authority to return cases to state courts on the ground that the Attorney General's certification was unwarranted." *Osborn*, 549 U.S. at 241. Thus, to the extent that a district court concludes, post-removal, that such a certification was incorrect, the proper procedure is for the district court to undo the substitution of the United States as the defendant and proceed with the

original named individual as the defendant for purposes of trial. *See id.* at 242. This reading of § 2679(d)(2) comports with the plain language of the statute and prevents "needless shuttling of a case from one court to another." *Id.* (quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 433 n.10 (1995)). Yuzhakov's arguments that the certification incorrectly determined that Nichols acted in the scope of her employment are therefore relevant only to the Motion to Substitute. The Motion to Remand will be denied.

### III.    Motion to Substitute

In the Motion to Substitute, the Government asserts that, pursuant to the Westfall Act, the United States should be substituted as the defendant in this case in place of Nichols because she was acting within the scope of her employment for purposes of the allegations in the Complaint. 28 U.S.C. § 2679(d)(1). Yuzhakov argues that the Court should deny the Motion to Substitute because Nichols's conduct was motivated by personal motivations and vindictiveness against Yuzhakov, such that her actions were not within the scope of employment.

#### A.    Legal Standards

As discussed above, the Westfall Act provides federal employees with immunity from personal liability for common law tort claims arising out of acts they undertook within the scope of their employment. *See supra* part II.A. When a case asserting such claims that was originally filed in state court is removed based on a certification that the federal employee's action was within the scope of employment, "[s]uch action or proceeding shall be deemed to be an action or proceeding brought against the United States," and "the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2). However, while the certification is conclusive for establishing scope of employment for purposes of removal, *see supra* part II.C, the propriety of

such a certification is "reviewable in court" for purposes of substitution. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995).

When a court must assess a challenge to the Government's scope-of-employment determination, the Attorney General's certification is "prima facie evidence that the defendant federal employee acted within the scope of his employment, thereby placing the burden on the plaintiff to prove otherwise." *Gutierrez de Martinez v. DEA*, 111 F.3d 1148, 1155 (4th Cir. 1997). Specifically, "a plaintiff must prove by a preponderance of the evidence that the defendant was acting outside the scope of his employment." *Doe v. Meron*, 929 F.3d 153, 165 (4th Cir. 2019). To do so, "a plaintiff must present or forecast specific evidence that contradicts the certification," which "at minimum" requires presenting or forecasting "evidence that shows that the conduct of the officers and employees at issue did not involve the type of work they were employed to perform, occurred outside authorized space and time or was purely personal in nature." *Id.* "[A] plaintiff may rely on the pleadings, affidavits or any other supporting documentary evidence . . . [but] cannot rely on conclusory allegations and speculation." *Id.* (internal citations omitted). In assessing the plaintiff's evidence, the district court does not defer to the Attorney General's certification but instead reviews the evidence *de novo*. *See Gutierrez de Martinez*, 111 F.3d at 1154. The following procedures apply to the district court's review of this issue:

> If the plaintiff's evidence is sufficient to carry the burden of proof, the defendant federal employee or the Government may come forward with evidence in support of the certification. At this point, the district court may permit (and limit) any needed discovery. Thereafter, the district court must determine whether there are any genuine issues of fact material to the scope-of-employment decision, and, if so, it may conduct an evidentiary hearing to resolve these factual issues. Once any factual issues are resolved, the district court should weigh the evidence on each side to determine whether the certification should stand.

*Id.* at 1155.

"When conducting a scope of employment analysis under the Westfall Act, courts generally apply the law of the state where the conduct occurred." *Meron*, 929 F.3d at 164. Because Nichols's allegedly tortious conduct occurred in Maryland, the Court will apply Maryland law for its scope-of-employment analysis. In Maryland, the test "for determining if an employee's tortious acts were within the scope of his employment is whether they were in furtherance of the employer's business and were 'authorized' by the employer." *Sawyer v. Humphries*, 587 A.2d 467, 470 (Md. 1991). As part of that analysis, Maryland courts consider whether the conduct is "of the kind the servant is employed to perform," occurred "during a period not unreasonably disconnected from the authorized period of employment," occurred "in a locality not unreasonably distant from the authorized area," and was "actuated at least in part by a purpose to serve the master." *Id.* at 471 (quoting *E. Coast Freight Lines v. Mayor & City Council of Baltimore*, 58 A.2d 290, 304 (1948)); *see Meron*, 929 F.3d at 164. The "employees' conduct need only be motivated at least in part by a purpose to serve their employer to be within the scope of their employment." *Meron*, 929 F.3d at 166 (citing *E. Coast Freight Lines*, 58 A.2d at 304). Notably, "even intentional torts and illegal conduct may fall within employees' scope of employment" if the tort was "a foreseeable aspect of the employee's employment." *Id.* (citing *Fid. First Home Mortg. Co. v. Williams*, 56 A.3d 501, 515–16 (Md. Ct. Spec. App. 2012)).

B.      **Scope of Employment**

Applying those standards here, the Corcoran Certification and the Hayes Certification constitute *prima facie* evidence that Nichols acted within the scope of her employment. *See Gutierrez de Martinez*, 111 F.3d at 1155. Therefore, the burden shifts to Yuzhakov to prove by a preponderance of the evidence that Nichols was acting outside the scope of her employment. *See Meron*, 929 F.3d at 165. Here, in addition to the Complaint, Yuzhakov has submitted documents

12

and emails relating to the February 14, 2025 incident, complaints asserted by Nichols including to the NIH Police, NIH's successful request that Yuzhakov be removed from working under the CRL contract with NIH, and subsequent complaints by Yuzhakov made against Nichols and CRL. Yuzhakov has also provided a sworn declaration and the purported audio recording of Yuzhakov's February 14, 2025 incident with Nichols.

Upon review of Yuzhakov's submitted evidence, the Court finds that he has not shown by a preponderance of the evidence that Nichols was acting outside the scope of her employment in relation to the conduct underlying the Complaint, which consisted of Nichols's report and follow-up statements that Yuzhakov had engaged in misconduct on February 14, 2025. The email that Nichols sent to report Yuzhakov's conduct on February 14, 2025 furthered NIH's business by reporting what she perceived to be inappropriate behavior by Yuzhakov to the NIH COR and to CRL, Yuzhakov's direct employer. Further, such an email was authorized by NIH because it was the kind of action that an employee may properly take upon an uncomfortable interaction in a work setting, the email was sent at work and directly related to workplace conduct, and it is fairly construed as motivated, at least in part, to serve NIH because it helped address inappropriate workplace conduct within NIH facilities. Ultimately, Nichols's complaint was the equivalent of an employee making a complaint about workplace harassment to a supervisor and the Human Resources Department. Such a complaint falls comfortably within the scope of Nichols's employment. *See Stewart v. United States*, No. PWG-13-3610, 2014 WL 1032017, at *3 (D. Md. Mar. 6, 2014) (finding that making reports about sexual harassment to management is "obviously" within the scope of employment); *cf. Alessa v. Phelan*, No. DLB-21-0924, 2025 WL 1019808, at *7, *9–10 (D. Md. Apr. 3, 2025) (finding that a federal employee's allegedly defamatory statements about a former colleague were within the scope of employment where the statements

were made in a work setting and related to the former employee's performance and reason for departure).

Yuzhakov nevertheless argues that Nichols's complaint was not made within the scope of her employment because she was motivated by "personal animus, revenge, and vendetta." Mot. Remand at 9, and purports to cite cases in support of the view that such actions fall outside the scope of employment.[1] As discussed above, however, even an intentional tort or an illegal act is within the scope of employment if it "was a foreseeable aspect of the employee's employment," and such an act remains within the scope of employment if it was "motivated at least in part by a purpose to serve [the] employer." Meron, 929 F.3d at 166.

Here, a complaint of possible harassment by a co-worker or contractor in the workplace is an entirely foreseeable event in the course of a federal worker's employment, and the record evidence does not demonstrate by a preponderance of the evidence that Nichols's complaint was motivated solely by personal animus or revenge, or another improper motive. Notably, Yuzhakov has acknowledged that he brought Nichols, his effective supervisor, a gift on her birthday and Valentine's Day and does not deny that the gifts included a box of chocolates and a bottle of wine, and the contemporaneous communications relating to the February 14, 2025 incident, including the email sent by Nichols about that encounter, support the conclusion that Yuzhakov initiated the interaction, provided these gifts, and "made a comment about [Nichols] looking good for [her] age." Pl.'s Reply Ex. A at 5. Under these circumstances, the evidence supports the conclusion

---

[1] Many of the cases Yuzhakov cites and quotes from in his briefs either do not exist, do not include the quotations offered by Yuzhakov, or stand for the opposite proposition from that for which they were cited by Yuzhakov. While the Court recognizes that Yuzhakov is self-represented, he still has an obligation to present legal authority to the Court in a truthful and accurate manner. See Fed. R. Civ. P. 11(b). Thus, Yuzhakov is forewarned that future filings must contain accurate legal citations or may result in sanctions against Yuzhakov. See Fed. R. Civ. P. 11(c).

that regardless of what Yuzhakov's intentions were, Nichols was uncomfortable about the interaction, and that her reporting of it was therefore at least in part to serve NIH by identifying inappropriate conduct in the workplace. The additional email in which Nichols reported another interaction during which, after she congratulated Yuzhakov on passing an examination, he said he did it for her and put his arm around her, and other incidents in which he commented on her eye color, further support this conclusion.

To the extent that Yuzhakov suggests that Nichols acted outside the scope of her employment when she reported Yuzhakov's conduct to the COR and the NIH Human Resources Department, rather than to CRL facility management, a failure to follow a specific procedure for reporting inappropriate workplace conduct does not undermine the conclusion that the report was nevertheless within the scope of employment.

Although Yuzhakov claims that, in fact, it was Nichols who made unwanted advances toward him, he has provided no contemporaneous corroboration for that version of events. Significantly, Yuzhakov's present claim that he was the victim of harassment by Nichols throughout his employment prior to the February 14, 2025 incident is not consistent with Yuzhakov's assertion in the Complaint that prior to the February 14 interaction, he had had "nearly 10 months of consensual, non-hostile interactions" with Nichols. Compl. at 1. Upon review of the recording of the February 14, 2025 interaction, the Court finds that it is consistent with the report provided by Nichols and does not meaningfully advance Yuzhakov's account.

The Court therefore finds that Yuzhakov has not met his burden to show by a preponderance of the evidence that Nichols acted outside the scope of her employment. As a result, the Court need not consider whether the Government can provide additional evidence in support of its certification, permit discovery, or hold an evidentiary hearing. *See Gutierrez de*

15

*Martinez*, 111 F.3d at 1155 ("[D]istrict court[s] should remain cognizant of the considerations weighing against protracted litigation under the Westfall Act."). Accordingly, the Motion for Substitution will be granted, and the United States will be substituted as the defendant in this case in place of Nichols.

## CONCLUSION

For the foregoing reasons, Yuzhakov's Motion to Remand will be DENIED; Yuzhakov's Motion for Leave to File an Audio Recording and Motion for Leave to File a Surreply will be GRANTED; Yuzhakov's Motion to Strike, Motion for Leave to Seek a Limited Evidentiary Appearance, and Motion for Leave to File a Limited Evidentiary Supplement and Supplemental Memorandum will be DENIED; and the United States' Motion to Substitute will be GRANTED. A separate Order shall issue.

Date: March 20, 2026

THEODORE D. CHUANG
United States District Judge

16